JACK M. CHESBRO, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36439, 36440, 36442–36449, 36452.   Promulgated October 28, 1953.

*William B. Mahoney, Esq.,* and *Harold Fein, Esq.,* for the petitioners.

*John James O'Toole, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Jack M. Chesbro, Docket No. 36440; Carl Silverstein, Docket Nos. 36442, 36443; Cecily Silverstein, Docket Nos. 36444, 36445, 36446; Morris Silverstein, Docket Nos. 36447, 36448, 36449; Smiling Jack Chesbro, Inc., Docket No. 36452.

124

OPINION.

MURDOCK, *Judge:* The books maintained for the various businesses were obviously incorrect and intentionally false. They contained many entries showing amounts as sales prices which were not the actual sales prices. Jack, Carl, and Morris had the books show only O. P. A. ceiling prices while the O. P. A. restrictions were in effect, although they admit that most of the sales were made at prices in excess of those permitted by O. P. A., and they now claim that most of their purchases were likewise made at costs greater than they were permitted to pay under the O. P. A. restrictions. They continued the false book entries after the O. P. A. restrictions were removed. They had their accountant prepare their returns solely from the books without telling him that the book entries were false and without telling him what the actual prices had been. Since the books were false and unreliable, the Commissioner had to resort to some other method in trying to find out what the true income from each of the various businesses was. The methods adopted by him and the results reached by him are not arbitrary and capricious under the circumstances created by the petitioners themselves.

The petitioners concede that sales were understated in their books and returns and show no error in the Commissioner's determination, after adjustments by stipulation, of the book understatement of sales of the Smiling Jack Chesbro partnership for 1946, of Smiling Jack Chesbro, Inc., for the 12 months ended June 30, 1947, and of Theatre Motors sales for 1946 and 1947, as set forth in the Findings of Fact, so those figures must be taken as established in the record for all purposes. The petitioners claim, however, that their purchases of automobiles were understated on their books by substantially equivalent amounts. The Smiling Jack Chesbro partnership books understated a few purchases in the total amount of $405 during 1946, but also overstated certain purchases by $200 during that same year. The Smiling Jack Chesbro, Inc., books understated purchases for its taxable year in the total amount of $3,973, and for the same year overstated others in the amount of $440. The record shows no other book understatement of purchases during the taxable years which would be material hereto. Witnesses for the petitioners testified to about 45 transactions, but less than half of those were tied into the books of the businesses to show that the purchases involved were understated on those books. Such understatements as were established by the testimony have been incorporated in the Findings of Fact. The Commissioner proved that in 4 transactions the purchase prices had been

overstated on the books and also introduced evidence to show that in 59 transactions the actual purchase price corresponded with that shown on the books. The Court is unwilling to accept the general statements of Jack, Carl, and Morris that the understatement of purchases on the books offset the understated sales to a greater degree than is disclosed by the Findings of Fact. The Commissioner has clearly established that the sales of these businesses were grossly understated and has likewise shown that the purchases were not understated in amounts at all comparable thereto. That was sufficient for his purposes, and if the purchases were understated to a greater extent, it was incumbent upon the petitioners to prove the understatements and that they have failed to do.

The petitioners claim that they are entitled to certain additional deductions which the Commissioner has disallowed or has failed to allow, and findings to support the petitioners' claims have been made wherever the evidence has justified such findings. No evidence was introduced in connection with a number of the items and, of course, no finding favorable to the petitioners could be made in such cases. No approximations are justified because in those cases where no findings favorable to the petitioners have been made the evidence fails to show that any amount was expended which would give rise to a deduction or an elimination of income.

The Commissioner determined that Jack, Carl, and Morris had received amounts from the corporation during its taxable year which were taxable to them as dividends. They originally denied that they had received any amounts from the corporation except their salaries which they had reported, but in their reply briefs admitted that each had received $5,000 from the corporation in addition to his salary. The Commissioner has determined that the earnings and profits of the corporation for its taxable year in excess of taxes were taxable to Jack, Carl, and Morris as dividends. The corporation had income in excess of the amount reported. Its books fail to show that it retained those additional earnings or spent them for any business purpose. The three men were the only stockholders of the corporation and had complete charge of and dominion over its funds. They personally received the amounts from the sale of cars in excess of the prices shown on the books and through that method each retained an equal portion of the additional income of the corporation for the taxable year. No dividends were actually declared but the amounts were taxable as dividends to the three stockholders. *Leo G. Hadley*, 6 B. T. A. 1031, affd. 36 F. 2d 543; *Paramount-Richards Theatres, Inc.* v. *Commissioner*, 153 F. 2d 602.

The Commissioner has taken the position that no deductible loss resulted from the demolition of the building on the corporation's parking lot during its taxable year for the reason that the property

was acquired solely as a parking lot and with an original intention of demolishing the building. The evidence shows that there was no intention in the beginning to demolish the building but a decision was reached to demolish it only after the corporation was unable to comply with requirements of the Buffalo Fire Department and the corporation, as its only alternative, demolished the building. The amount of the loss is not in dispute.

One of the adjustments made by the Commissioner in determining the deficiency against the corporation was the allowance of additional New York franchise tax in the amount of $8,526.34 accruable upon the additional income which he determined was taxable to the corporation. He filed an amended answer alleging that he had erred in allowing the additional deduction for New York State franchise tax and claiming the additional deficiency which would result from its disallowance. The corporation, using an accrual method of accounting, is entitled to accrue additional franchise tax based upon any adjustment made by the Commissioner increasing its income which is proper and which it has not contested, but it is not entitled to accrue franchise tax on additional income improperly added by the Commissioner or added by the Commissioner and contested by the taxpayer. *Curran Realty Co.*, 15 T. C. 341. It has not contested two adjustments in the total amount of $425.55 and may take deductions for the additional franchise tax due thereon. It has contested all other adjustments made by the Commissioner and is not entitled to any deduction for New York State franchise tax based upon additional income involved in those adjustments.

The Commissioner has the burden of proving his contention that a part of each deficiency, except in the case of Cecily, was due to fraud with intent to evade tax, and the Court has had this burden in mind as it considered the evidence bearing upon this issue of fraud. The Commissioner has sustained his burden by clear and convincing evidence. Jack, Carl, and Morris deliberately arranged to have the books contain false entries which would not show the true sales prices and in some instances would not show the true purchase prices. They argue that they did that only to deceive the Office of Price Administration but without any intention whatsoever of defrauding the Government out of the income taxes lawfully due it. It was pointed out that they had continued the system of fraudulent book entries after the O. P. A. restrictions were removed, and their explanation for that was that all of those with whom they did business had become accustomed to having the purchase price paid partly by check and partly by cash and they were forced to continue the bookkeeping method as before. Both of those arguments are obviously fatuous.

The evidence clearly shows that the total excess received for cars over the amounts shown on the books far exceeded the total excess paid

for cars over the amounts shown on the books, and those excess profits went directly into the pockets of the individual owners of the business. They used the "revolving fund" to assist them in pocketing the earnings and they also made distributions by two checks. Their fraudulent motives are also shown by checks made out to persons from whom they had purchased cars, but endorsed by others than those vendors and turned back into the business, all for no apparent purpose except to make it appear that they had paid more for the car than they had actually paid. The additional income realized by the businesses and by the individuals was not reported on the tax returns for the taxable years. The failure to report it was, in each instance where the Commissioner determined a deficiency, due to fraud with intent to evade tax. A substantial understatement was involved in each deficiency. The conclusion is inescapable that each deficiency was due to fraud with intent to evade tax as determined by the Commissioner.

The Commissioner, in determining the deficiencies against Cecily, increased her income by certain amounts shown as bank deposits. She earned some income of her own but received no other income. The deposits were of money given to her by her husband and an amount transferred from another account. The record as a whole supports the conclusion that the deposits in question were not income to Cecily.

Some of the adjustments made by the Commissioner were not contested in the petitions and others contested have been conceded to be correct by stipulation or statements in the record. The parties have stipulated in regard to other adjustments and the Commissioner conceded one item in the petitioners' favor, all of which can be taken care of in the recomputations to be submitted under Rule 50.

*Decisions will be entered under Rule 50.*