Cipollone's Sales and Service, Incorporated v. Commissioner. Vincent Cipollone and former wife, Helen A. Cipollone v. Commissioner. Vincent C. Cipollone v. Commissioner.
Cipollone's Sales & Service, Inc. v. Commissioner
Docket Nos. 50082-50084.
United States Tax Court
T.C. Memo 1956-80; 1956 Tax Ct. Memo LEXIS 218; 15 T.C.M. (CCH) 407; T.C.M. (RIA) 56080; March 30, 1956
*218 Robert M. Taylor, Esq., and George P. Walker, Esq., for the petitioners. George H. Bowers, Jr., Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the petitioners' income tax and additions to tax under section 293(b) of the Internal Revenue Code of 1939 as follows: Docket
Addition
Petitioner
No.
Year
Deficiency
to tax
Cipollone Sales and Service, Inc.
50082
1947
$13,108.05
$6,554.03
50082
1948
8,163.23
4,081.62
Vincent and Helen Cipollone
50083
1948
7,562.70
3,781.35
Vincent C. Cipollone
50084
1947
16,196.65
8,098.33
The issues common to all proceedings are the correctness of the respondent's action in determining (1) that the foregoing petitioners failed to report in their income tax returns amounts received from the sale of automobiles during 1947 and 1948, and (2) that the failure to report such amounts on their returns for the years in issue was due to fraud with intent to evade tax. Findings of Fact A portion of the facts have been stipulated and are found accordingly. Petitioner, Cipollone's Sales and Service, *219 Inc. (sometimes hereinafter referred to as the corporation), was incorporated under the laws of Pennsylvania. In 1945, petitioner, Vincent Cipollone, obtained from the Chrysler Corporation a franchise to sell Plymouth and DeSoto automobiles. This franchise subsequently was transferred to the corporation, which continued to operate thereunder during the years in issue. In addition to engaging in the sale of new automobiles, the corporation also was engaged in the sale of used cars, accessories, lubricating oil and gasoline during 1947 and 1948. The corporation filed Federal income tax returns for 1947 and 1948 with the collector for the first district of Pennsylvania at Philadelphia, Pennsylvania. Petitioner, Vincent Cipollone, filed a Federal income tax return for 1947 with the collector for the first district of Pennsylvania at Philadelphia, Pennsylvania, and petitioners, Vincent Cipollone and Helen A. Cipollone, who were husband and wife during 1948, likewise filed their joint Federal income tax return for 1948 with the collector for the first district of Pennsylvania at Philadelphia, Pennsylvania. During 1947 and 1948, Vincent Cipollone was president and Helen A. Cipollone, *220 his wife, was secretary and treasurer of Cipollone's Sales and Service, Inc. During those years the total authorized and outstanding capital stock of the corporation amounted to 250 shares having a par value of $100 per share, of which Vincent Cipollone held 225 shares, Helen Cipollone 15 shares, Joseph Hansell 5 shares and John Beaumont 5 shares. Vincent Cipollone established the business policies and procedures of the corporation and was in complete charge of all of its business affairs during the years in issue. He spent most of his time during 1947 and 1948 supervising the affairs of the corporation. The activities of the employees of the corporation, including John Beaumont, sales manager, were closely supervised by Vincent Cipollone during 1947 and 1948. Vincent Cipollone and John Beaumont handled all automobile sales on behalf of the corporation during those years. Beaumont was in charge of new car sales during 1947 and 1948 and handled the majority of such sales as well as a few used car sales to retail purchasers. Cipollone personally handled practically all of the used car sales on behalf of the corporation during the years in issue and he also handled several new car sales. *221 The corporation's offices, shops and sales rooms were located at 160 E. Plumstead Avenue, Lansdowne, Pennsylvania, during 1947 and 1948. Subsequently, the Plymouth and DeSoto franchise was sold by the corporation. In 1950, the corporation commenced a manufacturing business and moved to a new location on Belrose Lane in Radnor, Pennsylvania. During 1947 and 1948, the automobile market was exceptionally high because dealers were unable to obtain the new cars necessary to meet consumer demand. Due to the scarcity of new cars, there was a great demand for used cars during those years. All used cars were bringing "top dollar" prices. The corporation was in a position to dispose of all the new cars obtainable from Chrysler Corporation and to sell at peak prices all the used cars traded in. The corporation could demand payment of the consideration in any manner desired. The corporation kept the books and records required by the Chrysler Corporation during 1947 and 1948, including a general ledger, cash book, journal and purchase journal. The corporation was on an accrual basis. William E. Murphy, a public accountant, was retained by the corporation as an accountant during 1947 and *222 1948. Murphy prepared the corporation's income tax returns for those years from the books of the corporation. However, he did not make a detailed audit of the books and records of the corporation for 1947 or 1948, nor did he check and verify the invoices against the corporate books. In order properly to prepare the income tax returns of the corporation for those years, he found it necessary to spend considerable time in reconciling the cash transactions recorded on the books because the amounts entered thereon were not in accord with the amounts shown on the corporation's bank statement. Murphy discussed the preparation of the corporation returns for 1947 and 1948 with Vincent Cipollone. He also prepared the individual income tax return of Vincent Cipollone for 1947 and the joint income tax return of Vincent Cipollone and Helen Cipollone for 1948 from the books of the corporation and from information furnished him by Vincent and Helen Cipollone. During the course of their investigation of the income tax returns of the corporation for 1947 and 1948, the respondent's agents contacted Vincent Cipollone at his office on Belrose Lane, Radnor, Pennsylvania, in August 1951 and requested *223 him to produce the books and records of the corporation. The sales invoices of both new and used car sales for the years in controversy were the only records made available to the respondent's agents. Vincent Cipollone was unable to produce books from which the taxable income of the corporation for 1947 and 1948 could be determined. However, in April 1950, prior to the investigation of petitioners' income tax returns for 1947 and 1948, the respondent's agents obtained from petitioners' accountant lists of all cars sold by the corporation during the years in issue. The largest purchasers of the corporation's used cars during 1947 and 1948 were Gilmore-Smith, Inc., Lou Green and Williams Motors. George I. Smith, a stockholder in Gilmore-Smith, Inc., purchased used cars from the corporation during 1947 and 1948 on behalf of Gilmore-Smith. The cars were purchased from Vincent Cipollone personally. Gilmore-Smith, Inc., received no invoices or other memoranda of sale from the corporation or from Vincent Cipollone with respect to the cars purchased during the years here in question. In purchasing cars from the corporation it was the practice of George Smith to give Vincent Cipollone the *224 check of Gilmore-Smith, Inc. drawn payable to the corporation in an amount less than the agreed purchase price and to pay the balance of the consideration to Vincent Cipollone in cash. Smith would then replenish the cash paid to Vincent Cipollone by drawing a check of Gilmore-Smith, Inc. to "cash." The check written to "cash" was cross-referenced to the check made payable to the corporation by notations on each of the check stubs and the aggregate amount on both checks was recorded on the books of Gilmore-Smith as the purchase price of the automobile purchased from the corporation. Lou Green was sole proprietor of a used car business in Philadelphia, Pennsylvania, during 1947 and 1948. Morton Willens was employed by Lou Green as a buyer of used cars during the latter half of 1947 and throughout 1948. Mr. Willens purchased many used cars during the years in issue from the corporation. All of such sales were consummated with Vincent Cipollone personally. In purchasing cars from the corporation it was the practice of Morton Willens to give Vincent Cipollone Lou Green's check drawn payable to the corporation in the amount shown on the sales invoice (which amount was less than the agreed *225 purchase price) and to pay the balance of the consideration to Vincent Cipollone in cash. The foregoing procedure was in accordance with the instructions of Vincent Cipollone. It was the practice of Willens to replenish the cash paid to Vincent Cipollone as part of the agreed purchase price of a used car by drawing a check of Lou Green payable to "cash." The check drawn to "cash" was cross-referenced to the check drawn payable to the corporation by notations on each of the check stubs, and the aggregate amount on both checks was recorded on the books of Lou Green as the purchase price of the automobile purchased from the corporation. The invoice prices of used cars purchased from the corporation by Morton Willens on behalf of Lou Green during 1947 and 1948 generally were lower than the prevailing market prices at that time. Daniel Ricchetti was engaged in the new and used car business during 1947 and 1948 as a partner in Williams Motors. Ricchetti was buyer for Williams Motors in 1948 and during that year he purchased both new and used cars from the corporation. He consummated the purchase of all cars from the corporation with Vincent Cipollone personally. It was Ricchetti's practice *226 in purchasing cars from the corporation during 1948 to pay the entire purchase price to Vincent Cipollone in cash. Ricchetti received no invoices or other memorandum of sale from the corporation or from Vincent Cipollone with respect to cars purchased from the corporation during 1948. The corporation sold 130 used cars during 1947. Thirty-seven of the aforementioned used cars were traced to their purchasers by respondent's agents. Thirty-two cars were sold to Gilmore-Smith, Inc. and 5 were sold to Lou Green. The differences between the sales prices of used cars recorded on the books of the corporation and the purchase prices shown on the books of the aforementioned purchasers is set forth as follows: Used Cars Purchased by Gilmore-Smith, Inc.
Purchase
Sales price
price
shown by
shown by
No.
Cipollone's
Gilmore-
of cars
Sales and
Smith,
traced
Service, Inc.
Inc.
Difference
32
$28,750
$34,775
$6,025
Used Cars Purchased by Lou Green
Sales price
shown by
Purchase
No.
Cipollone's
price
of cars
Sales and
shown by
traced
Service, Inc.
Lou Green
Difference
5
$ 5,950
$ 7,000
$1,050
The total *227 difference between the sales prices recorded by the corporation and the purchase prices recorded on the books of the aforementioned purchasers represents unreported income in the amount of $7,075 on the sales of the used cars traced. The average discrepancy per used car traced to its purchaser by respondent's agents for the year 1947 amounts to $191.22. The projection of the average discrepancy of $191.22 over the total used cars sold during 1947 discloses total unreported income received by the corporation from used car sales during 1947 in the amount of $24,858.60. A 1947 model Hudson automobile was purchased from the corporation by Gilmore-Smith, Inc. on April 10, 1947 for $1,950. This sale was not recorded by the corporation and the proceeds were not included in its gross receipts for 1947. A 1947 DeSoto automobile was purchased from the corporation by Gilmore-Smith, Inc. on September 17, 1947 for $2,900.10. This transaction was falsely shown on the books of the corporation as a sale to Mabel M. Smith and only $2,532.10 of the proceeds received was included in the gross receipts of the corporation for 1947. The corporation sold 121 used cars during 1948. Forty-six of the *228 aforementioned cars were traced to their purchasers by respondent's agents during 1948. Twenty-seven used cars were purchased by Gilmore-Smith, Inc., 17 were purchased by Lou Green, and 12 were purchased by Williams Motors. The differences between the sales prices shown on the books of the corporation and the purchase prices shown on the books of the aforementioned purchasers are as follows: Used Cars Purchased by Gilmore-Smith, Inc.
Purchase
Sales price
price
shown by
shown by
No.
Cipollone's
Gilmore-
of cars
Sales and
Smith,
traced
Service, Inc.
Inc.
Difference
27
$33,350
$37,225
$3,875
Used Cars Purchased by Lou Green
Sales price
shown by
Purchase
No.
Cipollone's
price
of cars
Sales and
shown by
traced
Service, Inc.
Lou Green
Difference
17
$14,175
$16,375
$2,200
Used Cars Purchased by Williams Motors
Sales price
Purchase
shown by
price
No.
Cipollone's
shown by
of cars
Sales and
Williams
traced
Service, Inc.
Motors
Difference
12
$13,450
$15,220
$1,770
The total difference between the sales prices shown by the corporation and the purchase *229 prices shown by the aforementioned purchasers in the amount of $7,845 represents unreported income on the sales of the used cars traced. The average discrepancy per used car traced to its purchaser by respondent's agents for 1948 amounts to $140.09. The projection of the average discrepancy of $140.09 over the total of 121 used cars sold during 1948 discloses total unreported income received by the corporation from used car sales during that year in the amount of $16,950.89. A 1936 model Plymouth automobile was purchased from the corporation in 1948 by Williams Motors for $165. The proceeds of the foregoing sale are not included in the gross receipts of the corporation for 1948. A 1948 model Plymouth car was purchased from the corporation on August 2, 1948 for $2,237. This transaction was falsely shown on the books of the corporation as a sale to John Santore. The corporation included only $1,802.50 in its gross receipts for 1948. A 1948 model Plymouth automobile was purchased from the corporation by Williams Motors on August 3, 1948 for $2,100. Of the foregoing amount only $1,592.20 was included in the gross receipts of the corporation for 1948. This transaction was falsely *230 shown on the books of the corporation as a sale to Frank DeFoe. The total unreported income realized by the corporation from automobile sales during 1947 amounts to $27,176.60. The unreported income realized by the corporation from automobile sales during 1948 is $18,058.21. The income tax returns filed by Cipollone's Sales and Service, Inc. for 1947 and 1948 show gross sales from total operations during those years in the respective amounts of $488,095.11 and $574,452.96. The financial statements submitted by Vincent Cipollone on behalf of the corporation to the DeSoto Division of the Chrysler Corporation, Philadelphia Region, for 1947 and 1948 disclose that the gross sales from total operations of the corporation during those years are based on total annual sales in all departments of the corporation as follows: 1947
1948
New Vehicle Depart-
ment
$270,713.94
$308,851.15
Used Vehicle Depart-
ment
109,937.51
112,916.45
Stock Room
63,725.23
79,410.88
Service Department
43,718.43
73,274.48
Total
$488,095.11
$574,452.96
Petitioner, Cipollone Sales and Service, Inc., realized taxable income during 1947 which it did not report in its income tax *231 return for that year in the amount of $27,176.60. During 1948 the corporation realized taxable income in the amount of $18,058.21 which it failed to report in its return for that year. The corporation had earnings and profits of $47,207.23 and $47,504.77 for 1947 and 1948, respectively. The deficiencies in the income taxes of the corporation for 1947 and 1948 were due in whole or in part to fraud with intent to evade tax. Petitioner, Vincent Cipollone, reported adjusted gross income of $15,231.37 in his individual income tax return for 1947. Cipollone received taxable income from the corporation during 1947 which he failed to report in his return for that year. The deficiency in petitioner's income tax for 1947 was due in whole or in part to fraud with intent to evade tax. Petitioners, Vincent and Helen Cipollone, reported adjusted gross income in the amount of $32,395.49 in their joint income tax return for 1948. Petitioner, Vincent Cipollone, received taxable income from the corporation during 1948 which he failed to report in the joint return filed with Helen Cipollone for that year. The deficiency in the income tax of Vincent and Helen Cipollone was due in whole or in part *232 to fraud with intent to evade tax. Opinion Issue 1. Deficiency - Cipollone's Sales and Service, Inc. In the statutory notice of deficiency, the respondent determined that petitioner, Cipollone's Sales and Service, Inc., understated its taxable income for 1947 and 1948 in the amounts of $28,451.80 and $16,018.41, respectively. However, on brief, the respondent contends that the corporation understated its income in the amount of $27,176.60 for 1947 and in the amount of $17,863.38 for 1948. It is the respondent's contention that the foregoing amounts represent unreported income realized by the corporation from the sale of automobiles during 1947 and 1948. Petitioner contends that its automobile transactions for 1947 and 1948 are correctly recorded on its books and records, that it did not receive any money from the sale of cars during the years in issue over and above the sales prices shown on its records, and that its income tax returns for those years are therefore true and correct as filed. Petitioner, Cipollone's Sales and Service, Inc., was incorporated under the laws of Pennsylvania during 1946, and Vincent C. Cipollone was the president and principal stockholder thereof. *233 The corporation held a franchise from Chrysler Corporation during 1947 and 1948 to sell new Plymouth and DeSoto automobiles, and also sold used cars, accessories, lubricating oil and gasoline. During 1947 and 1948 the automobile market was exceptionally high because dealers were unable to obtain the new cars necessary to meet consumer demand. Due to the scarcity of new cars, there was a great demand for used cars during those years. All used cars were bringing "top dollar" prices. The corporation was in a position to dispose of all the new cars obtainable from Chrysler Corporation and to sell at peak prices all the used cars traded in. Moreover, the corporation could demand payment of the consideration in any manner desired. The record clearly demonstrates that it was the consistent practice of the corporation's officers, in consummating the sale of a used car, to require at least part payment in cash. The corporation maintained the books and records required by the Chrysler Corporation during 1947 and 1948, including a general ledger, cash book, journal, and purchase journal. The accounts were kept on an accrual basis. Vincent Cipollone testified that he has been unable to locate *234 the corporation's books for the years in issue and that they were lost or mislaid. Attempts by the respondent's agents to locate the books of the corporation have been unsuccessful. However, the corporation's accountant furnished the respondent's agents with lists of all cars sold by the corporation during 1947 and 1948. The parties have stipulated that the foregoing lists of automobiles sold by Cipollone's Sales and Service, Inc. during those years reflect the make, model and serial number of each automobile, the name and address of the purchaser and the selling price actually shown by the original books and records of the corporation. In addition, the investigating agents have had access to the corporation's sales invoices for those years. The respondent put in evidence the books and records of the three largest purchasers of used cars from petitioner during 1947 and 1948, Gilmore-Smith, Inc., Lou Green and Williams Motors. These used car dealers purchased approximately 30 per cent of all the used cars sold by the corporation during 1947 and 46 per cent of the used cars sold in 1948. It has been established both by oral testimony and documentary evidence that Gilmore-Smith, Inc. *235 and Lou Green purchased cars from petitioner by paying part of the agreed purchase price by check drawn payable to the corporation and paying the balance thereof in cash. It was the practice of these purchasers to draw a check payable to "cash" with which to replenish the cash paid over to the petitioner. The two checks relating to each sales transaction were cross-referenced by notations on the check stubs and total amount of the two checks entered on the books of Gilmore-Smith, Inc. and Lou Green as representing the purchase price of each car. Gilmore-Smith, Inc. received no invoices or memoranda of sale with respect to automobiles purchased from the corporation. Lou Green received sales invoices from Cipollone's Sales and Service, Inc. for all cars purchased from the corporation. In every instance, the amount shown on the invoice was less than the purchase price of the car. In accordance with instructions from Vincent Cipollone, the check drawn payable to the corporation was in an amount equal to the amount shown on the invoice. The balance of the purchase price was paid in cash. The cars purchased from the corporation by Williams Motors were paid for entirely in cash. No *236 invoice or other evidence of sale ever was given to Williams Motors for any automobile purchased from the corporation. The full cash purchase price was entered on the books of Williams Motors. A comparison of the books of Gilmore-Smith, Inc., Lou Green and Williams Motors with the records of the corporation shows, with one exception, that every used car sold by the corporation to these purchasers was recorded on the corporation's books at a lower price than that recorded on the purchaser's books. Respondent determined the total unreported income of the corporation from the sale of cars in 1947 and 1948 in the following manner: Of the 130 used cars sold by the corporation during 1947, the investigating officers traced 37 cars (29 per cent) to Gilmore-Smith, Inc. and Lou Green. Of the 121 used cars sold by the corporation during 1948, respondent traced 56 cars (46 per cent) to Gilmore-Smith, Inc., Lou Green and Williams Motors. The differences between the used car sales prices shown on the records of the corporation and the purchase prices of the same cars as shown on the books of Gilmore-Smith, Inc., Lou Green and Williams Motors were totaled and the average difference per used *237 car traced to these purchasers was projected over all used cars sold by the corporation simply by multiplying the average difference by the total number of used cars sold. The product so determined represents the unreported income received by the corporation from its total used car sales. To the foregoing figure the respondent has added amounts disclosed by the books of the three aforementioned purchasers to have been paid for both new and used automobiles, the sale of which either was not recorded on the books of the corporation or was falsely recorded thereon. We conclude from the record before us that the method of reconstructing the corporation's gross income utilized by respondent for the years in issue was fair and reasonable. The evidence introduced by petitioner to overcome the respondent's determination consists primarily of the self-serving testimony of Vincent Cipollone in which he denied that automobiles were sold for amounts greater than the amounts recorded on the books of the corporation. Three of the employees of the corporation testified that they had no knowledge that any cars were sold for amounts greater than the corporate records disclose. William E. Murphy, *238 a public accountant, retained by the corporation during the years in issue, testified on petitioner's behalf that he did not make a detailed audit of the books and records of the corporation for 1947 and 1948, nor did he check the sales invoices against the books of the corporation for those years. Murphy testified further that in order to prepare the income tax returns of the corporation for those years he found it necessary to spend considerable time in reconciling the cash transactions shown on the books because the amounts reflected thereon were not in accord with the amounts shown on the corporation's bank statement. It is well established that assertions by a taxpayer as to the amount of his income or self-serving declarations that his records are correct are insufficient to overcome the presumption of correctness which attaches to the determinations of the Commissioner. Louis Halle, 7 T.C. 245, affirmed 175 Fed. (2d) 500. We therefore conclude that petitioner has failed to establish any error on the part of the respondent, and we find that the corporation realized income in the amounts of $27,176.60 and $18,058.21 for the years 1947 and 1948, respectively, *239 which it failed to report in its returns for those years. Issue 2. Fraud with respect to Cipollone's Sales and Service, Inc. The second question presented for our determination is whether the understatement of gross income by petitioner, Cipollone's Sales and Service, Inc., for 1947 and 1948 was due in whole or in part to fraud with intent to evade tax. The burden of proving fraud rests upon the respondent. Henry S. Kerbaugh, 29 B.T.A. 1014, affirmed 74 Fed. (2d) 749. Further, if any part of the understatement is tainted with fraud, the addition to tax provided by section 293(b) of the 1939 Code will be applied to the entire amount of the deficiency. Russell C. Mauch, 35 B.T.A. 617, affirmed 113 Fed. (2d) 555. As previously discussed under Issue 1, the books of the corporation do not reflect the full consideration received from sales of used cars during 1947 and 1948. Moreover, the record discloses that the corporation attempted to conceal part of its income from the sale of a new DeSoto automobile during 1947 and 2 new Plymouths during 1948 by falsely recording on its books the names of the purchasers and understating the *240 proceeds of the sales. Further, the evidence shows that petitioner failed to record the sale in 1947 of a 1947 model Hudson and the sale in 1948 of a 1936 model Plymouth. The corporation received $2,115 from the two foregoing sales. The books maintained by the corporation were obviously incorrect and intentionally false. The Supreme Court has held that a wilful attempt to evade or defeat income tax may be inferred from such conduct as keeping a double set of books, making false entries or alterations or false invoices or documents, or any conduct the likely effect of which would be to mislead or to conceal. Spies v. United States, 317 U.S. 492. Further, in M. Rea Gano, 19 B.T.A. 518, we stated as follows: "A failure to report for taxation income unquestionably received, * * * would seem to permit no difference of opinion. It evidences a fraudulent purpose." Finally, it is well settled that where there is proof of fraud in a corporate return and a fraudulent intent can be found in the act of the corporate officer acting on behalf of the corporation, the fraudulent intention of the officer may be imputed to the corporation. Summerill Tubing Co., 36 B.T.A. 347; *241 Crescent Manufacturing Co. v. Commissioner, 181 Fed. (2d) 185; National City Bank of New York v. Helvering, 98 Fed. (2d) 93, affirming 35 B.T.A. 975. Accordingly, we are satisfied from the evidence that the corporation filed fraudulent returns for each of the years in issue with intent to evade tax. Issue 3. Deficiency - Vincent C. Cipollone and Helen A. Cipollone Respondent has taken the position that the amounts determined to represent unreported income for the corporation were received by Vincent Cipollone by way of informal dividends during the years in issue and that the omission to report such income was due to fraud with intent to evade tax. The record clearly demonstrates that for all practical purposes Vincent Cipollone was the owner of the corporation. He held 90 per cent of the outstanding stock, served as president of the corporation, directed its business affairs, established its policies and procedures, and closely supervised its activities. Vincent Cipollone and John Beaumont, sales manager, handled all automobile sales on behalf of the corporation during 1947 and 1948. Cipollone personally handled practically all of the *242 used car sales for the corporation during those years, and he consequently received practically all of the cash amounts from the sale of cars in excess of the prices shown on the books. Although the record shows that John Beaumont handled some used car transactions with retail buyers, he did not handle wholesale sales and it appears that Beaumont's activities were closely supervised by Cipollone, who also had charge of the funds of the corporation. We have heretofore discussed at length our reasons for concluding that the corporation received unreported income from the sale of cars in 1947 and 1948. There is no showing that the corporation retained the unreported earnings or that it spent them for a business purpose. The amount received by Cipollone represented corporate profit extracted and retained without disclosure, over and above the profit reported on the returns of the corporation. Under the foregoing circumstances, it seems clear that the unreported proceeds of the automobile sales received by Vincent Cipollone during the years in issue are taxable to him as funds diverted by an officer-stockholder of the corporation. United Mercantile Agencies, Inc., 23 T.C. 1105; *243 Jack M. Chesbro, 21 T.C. 123, affirmed 225 Fed. (2d) 674. Our holding in Jack M. Chesbro, supra, is pertinent here. There, the corporate petitioner was engaged in the purchase and sale of automobiles. The sales prices entered on the books of the corporation were incorrect, inasmuch as the consideration received in most instances exceeded the amounts recorded. The sales prices were paid to the corporation partly by check and partly in cash. In holding that the amounts realized from the sale of cars in excess of the prices shown on the corporate books were taxable to the stockholders as dividends, we stated at page 129: "The corporation had income in excess of the amount reported. Its books fail to show that it retained those additional earnings or spent them for any business purpose. The three men were the only stockholders of the corporation and had complete charge of and dominion over its funds. They personally received the amounts from the sale of cars in excess of the prices shown on the books and through that method each retained an equal portion of the additional income of the corporation for the taxable year. No dividends were actually *244 declared but the amounts were taxable as dividends to the three stockholders." * * * Vincent C. Cipollone reported adjusted gross income of $15,231.37 in his individual income tax return for 1947, and Vincent and Helen Cipollone reported adjusted gross income in the amount of $32,395.49 in their joint income tax return for 1948. The record discloses that Vincent C. Cipollone failed to report the receipt of additional taxable income for 1947, and that Vincent and Helen Cipollone likewise failed to report taxable income received in 1948. On the basis of the corporate returns here in evidence for the years in issue, we have found that the corporation had earnings and profits of $47,207.23 and $47,504.77 for 1947 and 1948, respectively. In determining under Rule 50 the amount of such earnings and profits available for distribution to Vincent Cipollone as constructive dividends and taxable to him as such, adjustment must first be made for the income tax deficiencies of the corporation and additions to tax determined hereunder in accordance with our opinion in Estate of Esther M. Stein, 25 T.C. - (Jan. 31, 1956). Issue 4. Fraud with respect to Vincent C. Cipollone and Helen A. Cipollone
*245 With respect to the question whether the foregoing omissions were due to fraud with intent to evade tax, Vincent Cipollone's conduct with respect to the receipt of money in excess of the sales prices entered on the corporate books, his consistent practice of demanding that the purchase prices be paid in whole or in part in cash, the making and issuing of false invoices, together with the complete omission of certain sales transactions from the corporate books and the recordation of lower sales prices on the corporate books than the prices actually charged, leave no doubt that the petitioner's actions were intentional, deliberate and calculated to mislead and conceal. The record before us contains clear and convincing evidence that Vincent Cipollone received substantial cash proceeds from the sale of used cars during the years in issue which he diverted to his own profit and that he filed false and fraudulent income tax returns for 1947 and 1948 with intent to evade tax. With respect to the liability of Helen Cipollone on the joint income tax return filed with Vincent Cipollone for 1948, where a taxpayer is guilty of fraud in failing accurately to report income for a given taxable *246 year and, for that year, taxpayer and his wife filed a joint income tax return, the spouses are jointly and severally liable for the entire tax, together with additions thereto. Myrna S. Howell, 10 T.C. 859, affirmed 175 Fed. (2d) 240. The consequences of the filing by Vincent Cipollone of the fraudulent income tax return for 1948 therefore attach to Helen Cipollone as well. Decisions will be entered under Rule 50.