*Decisions will be entered under Rule 50.*

WEBSTER ATWELL ET AL., PETITIONERS,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27596, 27597, 29775 to 29781, 32202, 32203.
Promulgated February 27, 1952.

---

[1] Proceedings of the following petitioners are consolidated herewith: Laura Burgher Atwell, Docket No. 27597; Webster Atwell, Docket No. 29775; Laura Burgher Atwell, Docket No. 29776; Wm. A. Sailer, Docket No. 29777; Patricia O'Leary Sailer, Docket No. 29778; John P. Thompson, Docket No. 29779; Joe Clark Thompson III Trust "A", Docket No. 29780; Jeremiah W. Thompson "A" Trust, Docket No. 29781; Wm. A. Sailer, Docket No. 32202; Patricia O'Leary Sailer, Docket No. 32203.

*Webster Atwell, Esq., Robert A. Wilson, Esq.,* and *E. Crippen, Esq.,* for the petitioners.

*John W. Alexander, Esq.,* for the respondent.

## OPINION.

MURDOCK, *Judge:* The Commissioner claims an increased deficiency upon the ground that the $160,000 was income to the petitioners since it was paid under the amended purchase agreement by Texas to American on behalf of the petitioners and the other purchasers of the Texas stock. He has the burden of proof on this issue. The purchase price was $711,000, not $871,000. The evidence shows clearly that the purchasers never intended to purchase a note having a larger

amount of principal due on it than $2,040,000 and it was the understanding throughout that the cash of $160,000 shown on the March 31, 1947, balance sheet of Texas was to go to American in order to reduce the principal of the note from $2,200,000 to $2,040,000. The slight change in the method of accomplishing this result was a change in form but not in substance. The purchasers derived no benefit from the transfer of the $160,000 and it does not represent income to these petitioners under any tenable theory. *Conrad N. Hilton*, 13 T. C. 623.

The Commissioner, relying upon the fact that the owners of the note had the debtor issue to them individual series of 20 notes each, contends that one-twentieth of the basis of each owner must be allocated to each note in the series so that a profit may be computed as each is canceled. The petitioners argue that there was great uncertainty, when they bought the note and later, of whether they would recover their cost and of how much profit, if any, they would have from the transaction; they have the right to recover their entire basis before being taxed on any gain under such circumstances; the series of notes did not change the situation taxwise but was merely for convenience in accounting as payments were made on the indebtedness; and the Commissioner is attempting to tax them upon a purely theoretical gain as if full payment of the indebtedness were assured and as if each retained note of the series had a value commensurate with each one retired, both of which assumptions are contrary to the facts. Both parties start with $677,775.70, the portion of the total cost allocated to the note, so no question of that allocation is before the Court despite mention of it in the petitioners' brief.

The present question would not have arisen if no notes had been issued to the individual purchasers of the indebtedness of Texas or if, as the resolutions provided, but one note had been issued to each purchaser, for in such cases clearly each purchaser of an undivided share of the indebtedness would have been entitled to recover his entire basis before being taxed with a gain on any excess. The purchasers chose to follow that same method of reporting the payments despite the issuance of the 20-note series because they felt it was the only safe and proper method in view of the inherent uncertainty as to the amount ultimately to be received by each from the insolvent debtor. The Commissioner would regard the 20 notes as identical units, each evidencing a divided interest in the indebtedness and each having a value equal to that of every other one in the series, so that the total basis of each owner could be allocated in equal portions to each of the 20 notes just as if each taxpayer held 20 identical bonds. But there the Commissioner errs.

It would have been proper to have allocated the total basis among the 20 notes if each had represented a definite separate interest in the

indebtedness and had had a readily determinable fair market value. Each could then have taken that portion of the total basis which its fair market value bore to the fair market value of the twenty notes, and if payable pro rata and without preference the method of allocation used by the Commissioner would have been proper. For example, if there had been a prearranged plan designating which note would be canceled upon the first payment, which upon the second payment, and so forth, then it might have been possible to have determined the fair market value, or at least the approximate fair market value, of each note. Obviously, the first note to be paid would have had a fair market value approximating its face value, whereas the last notes to be paid might not have had any fair market value. A fair and proper allocation of the basis could have been made in proportion to the fair market value of each note in the series.

However, there was no prearranged plan for choosing the note to be canceled upon any particular payment or for pro rata payments on each without preference. Instead, each individual owner of an interest in the debt chose at random from his notes the one to be canceled on any particular payment. Thus, there was no way of determining the fair market value of each note in the series and no way, both fair and practical, of allocating the basis among the 20 separate notes. Indeed, the interest of each participant remained, for all practical purposes at least, a single undivided interest and did not become 20 separate divided interests upon the issuance of the series of 20 notes. Only because the interest of each purchaser remained an undivided interest in the total indebtedness was it satisfactory to each to have one of the series of notes retired and canceled with each payment made by the debtor. An owner of an interest in a debt can insist that payment be pro rata and without preference where there is no prior arrangement providing otherwise. The payments here were not made pro rata and without preference on each of the 20 notes issued to each owner of an interest in the indebtedness, but, nevertheless, they were satisfactory because they were pro rata in so far as the undivided interest of each owner in the indebtedness was concerned. The participants were not in position to dispose of an individual note to an outside party, since the payments did not have to be pro rata and since there was no prearranged plan for a particular payment to be on a particular note. The facts distinguish the divided interest of a bondholder from whatever interests these series of notes gave to these petitioners and demonstrate that these notes did not serve to divide the interests 20 ways and were not separately marketable. The petitioners also point out that the debt was long past due, in default, and subject to a large amount of accumulated interest at the time the 20-series notes were issued, with the result,

they argue, that those notes were not true promissory notes under the laws of Texas. That question need not be decided. Likewise immaterial is the question of what portion of the basis would be used if a purchaser sold a portion of his undivided interest in the indebtedness. It is sufficient for present purposes to hold that the 20-series notes did not represent 20 divided interests in the indebtedness of a kind requiring an allocation of the basis for Federal income tax purposes under the circumstances here present. The use of the method demanded by the taxpayers may possibly result in larger taxes eventually, if the payments continue, but it is proper for them to use that method. Cf. *Duffin* v. *Lucas*, 55 F. 2d 786, certiorari denied 287 U. S. 611; *Burnet* v. *Logan*, 283 U. S. 404; *Inaja Land Co.*, 9 T. C. 727.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

KERN, *J.*, concurs in the result.