**HARRY M. STEVENS, Inc. v. JOHNSON.**

United States District Court,
S. D. New York.

Sept. 21, 1953.

John E. O'Hora, New York City, for plaintiff, Raphael M. O'Hara, Detroit, Mich., of counsel.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City, for defendant, Henry L. Glenn, Asst. U. S. Atty., Thomas C. Burke, Asst. U. S. Atty., New York City, of counsel.

McGOHEY, District Judge.

Both parties move for summary judgment on the complaint as amended,[1] which seeks recovery, with interest, of $266,061.41 alleged to have been erroneously and unlawfully assessed and collected as taxes due for the year 1946 pursuant to Sec. 102 of the Internal Revenue Code.[2]

The facts are not in dispute. Plaintiff is a New York corporation. It keeps its books of account and files its tax returns on the basis of cash receipts and dis-

1. The original complaint contained 3 "counts." On previous motions count 3 was dismissed with leave to amend and summary judgment sought by both parties on count 2 was denied because the pleadings as they then stood raised an issue of fact as to whether the plaintiff

was liable to any tax under § 102. The plaintiff has not amended count 3. It has stipulated to a dismissal of count 1 with prejudice and amended count 2, to eliminate the issue of fact.

2. 26 U.S.C.A. § 102.

bursements. Its ordinary income tax on 1945 income amounted to $142,660.64 and was paid in 1946. Its ordinary income tax on 1946 income amounted to $726,036.46, part of which was paid in 1947 and the balance in 1949.

In 1949, the Commissioner of Internal Revenue assessed a deficiency of $565,070.70 in the tax imposed by Sec. 102. The plaintiff having paid the amount assessed plus interest of $104,313.59, duly filed with the defendant a claim, which has not been acted on, for refund of $266,061.41, the total of the alleged overassessment plus the interest paid thereon.

Sec. 102 imposes on business corporations "improperly accumulating surplus", a surtax the amount of which is determined by applying the several prescribed rates respectively to specified portions "of the *undistributed* section 102 net income" [emphasis supplied]. "Section 102 net income" is defined so far as here relevant as "the net income * * * minus the sum of * * * Federal income * * * taxes * * * paid or accrued during the taxable year * * * ."[3]

In computing the amount of the plaintiff's "section 102 net income" for 1946, the Commissioner deducted from its "net income" the income tax of $142,660.64 paid in 1946 on 1945 income. The plaintiff contends that the Commissioner should have deducted instead, the income tax of $726,036.46 which "accrued" in 1946 on that year's income. The defendant replies that since the plaintiff's accounts are kept on a cash basis, deduction of taxes "accrued" in 1946 is prohibited by Sec. 43 of the Code.[4] That section provides that "The deductions and credits * * * provided for in [chapter 1 of which Sec. 102 is a part]

shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."

I think the defendant's view of the law is incorrect. In order to compute the tax here involved, the taxpayer's "net income" must first be determined according to the taxpayer's basis of accounting, i. e., whether "cash" or "accrual." But then, taking the "net income" thus arrived at as a base figure, it is also necessary to compute and "clearly reflect" the *undistributed* Sec. 102 net income to which the rates are to be applied. And in order to do that for any year, it seems to me to be necessary, regardless of the taxpayer's basis of accounting, to deduct from that year's "net income" the amount of "Federal income tax * * * accrued" on that year's "net income."[5] The amount of this "accrued" tax, it is true, remains at year's end in the taxpayer's possession undistributed. But surely it is not for that reason "improperly accumulat[ed] surplus" or "undistributed section 102 net income" in the statutory sense, since it can neither be retained as surplus nor distributed as dividends but must be paid over to the Government in the succeeding year.

The precise point involved here seems not to have been judicially decided. But the Courts of Appeal for the District of Columbia[6] and for the Second[7] and Eighth[8] Circuits have held that personal holding companies, though on a cash basis, should be allowed, under Sec. 505 (a) (1) which is similar to Sec. 102(d) (1) (A), to deduct taxes "accrued" in the current year in computing their surtax

3. 26 U.S.C.A. § 102(d) (1) (A).

4. 26 U.S.C.A. § 43.

5. See Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 98, 51 S.Ct. 11, 75 L.Ed. 234; Rodney, Inc., v. Hoey, D.C., 53 F. Supp. 604, 608.

6. Commissioner of Internal Revenue v.

Clarion Oil Co., 80 U.S.App.D.C. 41, 148 F.2d 671, certiorari denied 325 U.S. 881, 65 S.Ct. 1575, 89 L.Ed. 1997.

7. Aramo-Stiftung v. Commissioner, 2 Cir., 172 F.2d 896; Joan-Carol Corporation v. Commissioner, 2 Cir., 180 F.2d 751.

8. Birmingham v. Loetscher Corp., 8 Cir., 188 F.2d 78.

under Sec. 500 of the Code. That tax which is imposed on improper accumulations of income by personal holding companies, is held to apply "solely to the income transactions of a single year." I think it clear that the Sec. 102 tax must be held to apply in the same way. Its obvious purpose is to force improper accumulations of *each year's income* out of the "incorporated pocketbook[s]" of business corporations and into the hands of stockholders where they will be taxable, by the imposition of a penalty tax on the amounts so accumulated. That too is the purpose of Sec. 500 as appears from the Committee reports[9] recommending enactment of the sections relating to personal holding companies.[10] Indeed prior to 1934, Sec. 102 applied to the latter as well as to ordinary business corporations. In the Internal Revenue Act of 1934, Congress removed personal holding companies from the operation of Sec. 102 but only in order more effectively to reach their improper accumulations. There is nothing in the Reports, however, or in the Code, to suggest that the legislative purpose to penalize improper accumulations of corporate income was modified in favor of personal holding companies. Neither is there anything to suggest that they were intended to be preferred in the matter of deducting "paid or accrued" taxes in computing the amount to be subjected to the penalty tax. Rationally, therefore, the words which authorize deduction of taxes "paid or accrued" should not be given in Sec. 102(d) (1) (A) a meaning different from that which the Courts have given to the same words in Sec. 505 (a) (1). The example used by Chief Judge Groner in the Clarion Oil case is appropriate here. If the plaintiff's undistributed section 102 net income for 1946 had amounted to no more than $726,036.46, the sum needed to pay the plaintiff's ordinary income tax on 1946 "net income," "the Commissioner never in the world would have contended it should also pay the penalty tax on the

sum so reserved,—for that sum was not [undistributed Sec. 102 net income] in the statutory sense, but for all practical purposes was 'earmarked' for payment of accrued taxes not then payable." [80 U.S.App.D.C. 41, 148 F.2d 676.]

The plaintiff's motion for summary judgment on the complaint as amended is granted. The defendant's motion is denied.

Settle order.

---

9. Ways and Means Committee—HR R. No. 704, 73d Cong. 2d Sess. § (4).

