UNITED MERCANTILE AGENCIES, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

F. W. DRYBROUGH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

L. N. SIMPSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40028, 40029, 40030. Filed March 31, 1955.

*Donald V. Hunter, Esq.*, for the petitioners.

*Lyman G. Friedman, Esq.*, and *Melvin L. Sears, Esq.*, for the respondent.

1110

OPINION.

BRUCE, *Judge:* The two individual petitioners, Drybrough and Simpson, owned or controlled all of the outstanding stock of United, the corporate petitioner. During the taxable years involved the individual petitioners took more than $200,000 in checks from the corporation's incoming-mail basket. They cashed the checks and divided the proceeds in ratio to the amount of common stock owned or controlled by each. They thus caused the corporate income to be understated by the amount of the withdrawals, and no part of the amounts so received was reported on their individual income tax returns.

We have held time and again under circumstances similar to those here present that the diverted funds, are taxable as income to the corporation and are taxable as dividends to the extent of earnings and profits to the officer-stockholders receiving them. *Eugene Vassallo*, 23 T. C. 656; *Michael Potson*, 22 T. C. 912; *Bennett E. Meyers*, 21 T. C. 331; *Auerbach Shoe Co.*, 21 T. C. 191, affd. (C. A. 1) 216 F. 2d 693; *Jack M. Chesbro*, 21 T. C. 129 (on appeal C. A. 2). See also *Currier v. United States*, (C. A. 1) 166 F. 2d 346. Petitioners argue that the above line of cases is distinguishable because there all of the stockholders participated in the withdrawal of funds from the corporation while here Drybrough's wife, who owned 20 per cent of the outstanding stock, was not even aware of the withdrawals until after the close of the taxable years involved. They argue that this converts the diversion of funds into a wrongful taking amounting to an embezzlement. United contends that, as the checks were taken by Drybrough and Simpson acting as embezzlers rather than as agents of the corporation, the checks were not "received" by the corporation and, therefore, as a cash basis taxpayer, it did not realize any taxable income. In the alternative United contends that, if the checks were "received," it sustained an offsetting "embezzlement" loss deductible under section 23 (f) of the 1939 Code,[2] citing

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
  In computing net income there shall be allowed as deductions:
  \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
  (f) LOSSES BY CORPORATIONS.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

*Summerill Tubing Co.*, 36 B. T. A. 347. The individual petitioners contend that they are not taxable on "embezzled" funds, citing *Commissioner* v. *Wilcox*, 327 U. S. 404.

Petitioners' contentions are without merit. Under the circumstances present in the instant case, the ownership of stock by Drybrough's wife did not convert what would normally be considered a corporate distribution into an embezzlement of funds for tax purposes. The evidence establishes that Drybrough handled all of his wife's business affairs, including the collection of income on her business properties. He had in his possession blank, signed, stock transfer forms which gave him the power to sell her corporate stock. He could draw checks on her business bank account. Drybrough's wife took no active interest in the affairs of United and her positions as director and secretary of the corporation were strictly nominal. We are convinced that the individual petitioners were not in the habit of consulting Drybrough's wife concerning corporate affairs and that each was of the opinion that Drybrough had full power to act and receive income on his wife's behalf. It is also evident that a part of the distribution of diverted funds to Drybrough was made on his wife's stock and that neither of the individual petitioners thought that they were infringing upon her rights as a stockholder by making a distribution without her consent or knowledge. Practically speaking the transactions represented the receipt of checks by the corporation (cf. *Auerbach Shoe Co., supra*), the endorsement and cashing of the checks by the corporation's principal officers, and the distribution of the money to the stockholders in proportion to their stock holdings (cf. *Jack M. Chesbro, supra*).

*Summerill Tubing Co., supra*, is clearly distinguishable. There corporate funds were taken by the corporation's president to the exclusion of minority and preferred stockholders. Here United did not sustain a realized loss by the surreptitious, but pro rata, distribution of its corporate funds. Furthermore the individual petitioners certainly had sufficient "claim of right" to their pro rata share of the diverted funds to be taxable thereon. *W. L. Kann*, 18 T. C. 1032, affd. (C. A. 3) 210 F. 2d 247, certiorari denied 347 U. S. 967. Cf. *Healy* v. *Commissioner*, 345 U. S. 278; *Currier* v. *United States, supra*.

Bearing in mind the principles of corporate entity, the actions of the individual petitioners may possibly, under Kentucky statutes, have technically amounted to embezzlement. So also would the actions of a sole stockholder who pocketed corporate money without the formality of declaring dividends. To allow the corporation and its stockholders to escape taxation under such circumstances because the distributions are technically illegal would make a mockery of the internal revenue laws. Cf. *George M. Still, Inc.*, 19 T. C. 1072, affd.

(C. A. 2) 218 F. 2d 639. Under petitioners' theory the stockholders could escape both corporate and individual taxes by the surreptitious diversion of corporate funds to their own use, and then, if discovered, by claiming embezzlement satisfy all civil liability for taxes by returning the funds to the corporation and including them in the income of the corporation in the year of discovery. To borrow the language of the Court of Appeals in *W. L. Kann* v. *Commissioner*, (C. A. 3) 210 F. 2d 247, at p. 251: "Such local law concept of embezzlement, while it may be useful to deter those in control of a corporation from defrauding creditors and minority stockholders, should not, in our opinion, be used as a vehicle for tax avoidance, absent a clear mandate to the contrary."

The individual petitioners contend that in any event, if we sustain the tax liabilities of United as determined by respondent, the distributions of the diverted funds were not dividends within the purview of section 115 (a) of the 1939 Code.[3] These tax liabilities, they argue, wipe out all accumulated and current earnings and profits in each of the taxable years involved. Relying on such cases as *Wm. J. Lemp Brewing Co.*, 18 T. C. 586, holding that a cash basis personal holding company may deduct accrued taxes under section 505 (a) (1) of the 1939 Code in computing its "Subchapter A Net Income," and *J. Warren Leach*, 21 T. C. 70, holding that liability for taxes must be considered in determining insolvency in transferee cases, they assert that accrued but unpaid taxes should be deducted in determining the earnings and profits of a cash basis corporation.

A similar argument was rejected by this Court in *Paulina Dupont Dean*, 9 T. C. 256 (appeal dismissed (C. A. 3)). Following *Helvering* v. *Alworth Trust*, 136 F. 2d 812, certiorari denied 320 U. S. 784, reversing 46 B. T. A. 1045, we held that accrued but unpaid Federal taxes for the current and past years should not be considered in the case of a cash basis corporation in determining the amount of earnings and profits available for the payment of dividends. We distinguished the personal holding company cases which are based upon the premise that section 505 (a) (1) specifically allows the deduction of accrued taxes even by a cash basis taxpayer. Section 102 cases (cf. *Harry M. Stevens, Inc.* v. *Johnson*, 115 F. Supp. 310) are distinguishable for the same reason. Similarly, the fact that unpaid and even previously unknown tax liabilities are to be considered in determining insol-

[3] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

vency in transferee cases, is no authority for considering such liabilities in determining the amount of earnings and profits available for the payment of dividends. Therefore, as unpaid taxes should be disregarded, both the accumulated and current earnings and profits of United exceeded the amount of the distributions in each of the taxable years involved. Hence, the full amounts of the distributions are taxable as dividends.

Drybrough and Simpson received 75 and 25 per cent of the diverted funds, respectively. Respondent determined that the full amount received by Drybrough was taxable as his dividend income. Drybrough contends that in no event should he be taxable on more than 55 per cent of diverted funds as that was the extent of his stock ownership. With the latter contention we agree. Normally a stockholder is taxable on the amount received regardless of whether the distribution is proportionate to his stock holding. *Ben R. Meyer*, 45 B. T. A. 228. But in the instant case Drybrough received 20 per cent of the diverted funds on behalf of his wife, and to that extent the amount he received was not his income. *A. M. Johnson*, 32 B. T. A. 156.

We have found that in each of the taxable years involved at least part of the deficiency of each of the petitioners was due to fraud with intent to evade tax. We think our finding is supported by clear and convincing evidence.

United does not contest its liability for additions to tax because of fraud in the event we hold that the failure to include the diverted funds in its reported gross income resulted in deficiencies. The individual petitioners contend, however, that even if we hold that the distributions were taxable to them as "constructive dividends," they did not know they had received taxable income. They readily admit that they intended to evade corporate taxes and each entered a plea of nolo contendere when so charged in the prior criminal proceeding. It is their contention that they did not *intend* to evade their personal income taxes.

We need not decide whether a taxpayer is liable for additions to his individual tax where at least part of his personal deficiency is a result of his fraudulent scheme to evade corporate tax. Nor do we need to determine whether the individual petitioners were aware that the full amount of the distributions in question were taxable as dividends; although Simpson's testimony, that he did not report his share of the diverted funds because he did not wish to reveal the wrongful evasion of corporate tax, indicates that he, at least, knew that these funds were taxable to him.

Both of the individual petitioners testified that they did not think the diverted funds were taxable as dividends. The primary reason given was that, if the diverted funds had been included in the corporate income, the corporation would have paid 95 per cent of the

funds to the Government in taxes, which would have prevented it from paying a dividend in the amount received. However, it is evident from the petitioners' testimony that, to the extent of at least 5 per cent of the diverted funds, they knew they were taking money which would have been available for the payment of dividends.

Petitioners argue that we cannot attribute to them knowledge of having received a dividend where no dividends were formally declared and when the declaration of a dividend would have endangered the necessary borrowing capacity of the corporation. We do not believe the individual petitioners were so naive as to think that taxability depends upon the wisdom of making the distribution or that stockholders can escape taxation on a corporate distribution by the simple expedient of failing to formally declare a dividend. Both were successful business men with many years experience. Despite their self-serving denials, we are convinced each knew that at least part of the distributions was taxable as income to him. In order to sustain the additions to tax only part of the deficiency must be due to fraud with intent to evade tax. *Bennett E. Meyers, supra.* Accordingly, the statute of limitations has not run as to any of the petitioners on any of the years involved, and respondent properly determined that each petitioner was liable for 50 per cent additions to tax under section 293 (b) [4] of the 1939 Code.

Petitioners have advanced a number of variations to the arguments set forth herein, with respect to their liability for tax on the diverted funds. In order not to unduly burden this opinion we think it is sufficient to say that these arguments have been carefully considered and in our opinion are without merit.

The next issue for decision is whether United properly reported the proceeds from collections on assets purchased from the liquidators of insolvent commercial banks. The assets in question were acquired in lump-sum purchases from the liquidators of four insolvent banks, and in each instance consisted of hundreds of items of various kinds such as notes, judgments, accounts, mortgages, and other evidences of debt. United did not attempt to allocate its cost among the various items. In each case receipts in excess of expenses were treated as a return of capital until the cost of all of the items purchased from a particular liquidator was recovered. Thereafter, receipts in excess of expenses were treated as profits. Respondent determined that all receipts should be treated as partly a return of cost and partly profit.

In *William T. Piper*, 5 T. C. 1104, 1109, we stated the established rule for determining profits in this type of situation. We there said:

---

[4] SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY.

(b) FRAUD.—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2).

"where a mixed aggregate of assets is acquired in one transaction, the total purchase price shall be fairly apportioned between each class so as to determine profit or loss on subsequent sale of specific assets in the group. If such apportionment be impractical, no profit shall be realized until the cost shall have been recovered out of the proceeds of sales." Cf. *Inaja Land Co., Ltd.*, 9 T. C. 727; *Nathan Blum*, 5 T. C. 702; *Warren* v. *Commissioner*, (C. A. 1) 193 F. 2d 996, reversing on other grounds 16 T. C. 563.

In the instant case apportionment would be wholly impracticable. In each purchase United acquired hundreds of differing items, each having a highly speculative value if any value at all. Only years of attempting to collect on the various items would disclose which were worthless, the amount collectible on others, and whether the over-all purchase would result in a gain or loss.

Respondent argues that as United's bid was influenced by whether the individual debtors were listed in the telephone book, by competitive bids which were made either on individual items or groups of individual items, and by information furnished by the liquidator concerning various items, there was a practical basis for allocation. We disagree. While this information was useful in determining an aggregate bid price, where the number of items involved would tend to balance out errors in estimates, it would not constitute a proper, rational, or reasonably accurate basis for allocating to each individual item a part of the cost. Under the circumstances, we think United properly recovered its cost before reporting a profit. *Webster Atwell*, 17 T. C. 1374 (appeal dismissed (C. A. 5)); *Inaja Land Co., Ltd., supra; William T. Piper, supra; John D. Fackler*, 39 B. T. A. 395.

The final issue is whether United was entitled to a $4,550 deduction in 1945 for taxes paid. In December of that year United sent three cashier's checks totaling $4,550 to a real estate tax specialist, Markham, whom United had employed to clear its title to certain land in Illinois. The taxes were paid with other checks in 1947. The original cashier's checks were returned to United by Markham. They were surrendered at the bank on July 23, 1947, and United's account was credited in the amount of $4,550.

United as a cash basis taxpayer is entitled to deduct only taxes actually paid. *Arthur T. Galt*, 31 B. T. A. 930. Obtaining the cashier's checks did not constitute payment. Nor did United make payment by sending the checks to Markham, its agent. *Arthur T. Galt, supra*. Therefore, as Markham did not turn the checks over to the local tax officials (cf. *Lillian Bacon Glassell*, 12 T. C. 232), United is not entitled to the claimed deduction.

*Decisions will be entered under Rule 50.*