ANNA R. BLACK, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 79055–79058. Filed December 9, 1960.

*C. Gordon Haines, Esq.,* for the petitioners.
*Herbert A. Seidman, Esq.,* for the respondent.

### OPINION.

KERN, *Judge:* These cases have been consolidated for hearing and opinion. They involve deficiencies determined by respondent in petitioners' Federal income taxes for the years and in the amounts as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 79055 | Anna R. Black | 1952 | $2,956.68 |
| | | 1953 | 2,827.09 |
| 79056 | John A. and Charlotte B. Murray | 1952 | 5,193.46 |
| | | 1953 | 3,813.36 |
| 79057 | Alice B. Lewis | 1952 | 1,339.28 |
| | | 1953 | 1,351.04 |
| 79058 | John F., Jr., and Elizabeth Apsey | 1952 | 1,483.86 |
| | | 1953 | 1,861.40 |

[1] Proceedings of the following petitioners are consolidated herewith: John A. and Charlotte B. Murray, Docket No. 79056; Alice B. Lewis, Docket No. 79057; and John F., Jr., and Elizabeth B. Apsey, Docket No. 79058.

All of the deficiencies arise by reason of respondent's determinations that the basis of certain notes upon which (or upon the notes substituted therefor by the payor) petitioners Anna R. Black, Charlotte B. Murray, Alice B. Lewis, and Elizabeth B. Apsey received payments during the taxable years had a lesser basis in their hands than that used by them in computing their income as returned and for which they here contend.

All of the facts herein have been stipulated. We find them to be as stipulated and incorporate herein by this reference the stipulation and the exhibits attached thereto.

The petitioners herein filed their Federal income tax returns for the years 1952 and 1953 with the district director of internal revenue at Baltimore, Maryland.

On April 15, 1951, S. Duncan Black died testate in Baltimore, Maryland. The decedent's last will and testament dated October 1, 1948, was duly probated in the Orphans' Court of Baltimore County by his executors, S. Duncan Black, Jr., his son, Milton R. Smith, and Glen H. Tresler. After certain specific bequests to his widow and son, testator left 25 per cent of the residue of his estate to his widow, Anna R. Black, and 22½ per cent of the residue to each of his three daughters, Elizabeth B. Apsey, Alice B. Lewis, and Charlotte B. Murray. The remaining part of the residuary estate was bequeathed to decedent's secretary who is not a petitioner herein.

The Black Manufacturing Company, Parkton, Maryland, was incorporated on January 31, 1945, under the laws of the State of Maryland for the purpose of manufacturing tools and selling welding and paint spray equipment. The outstanding shares of that corporation during the period July 31, 1948, to January 31, 1951, were owned as follows:

| Name | Type of share | Shares outstanding |
|---|---|---|
| S. Duncan Black | Common | 10,000 |
| Anna R. Black | Common | 1,500 |
| S. Duncan Black, Jr | Common | 3,750 |

The officers of the Black Manufacturing Company as of January 31, 1951, were:

President and treasurer, S. Duncan Black, Jr.
Vice president, Edward R. Kanely.
Secretary, Eugene J. Casey.

Prior to his death S. Duncan Black personally loaned $182,591.76 to the Black Manufacturing Company on the following dates and in the following manner:

| Date | Face amount | Promissory notes payable to S. Duncan Black | Date | Face amount | Promissory notes payable to S. Duncan Black |
|---|---|---|---|---|---|
| 1/31/50 | $10,000.00 | On demand. | 5/3/50 | $5,000.00 | On demand. |
| 1/31/50 | 10,000.00 | On demand. | 5/17/50 | 40,000.00 | 15 Mos. |
| 1/31/50 | 10,000.00 | On demand. | 5/17/50 | 15,500.00 | 15 Mos. |
| 1/31/50 | 10,000.00 | On demand. | 8/31/50 | 691.76 | 1 year. |
| 4/14/50 | 5,000.00 | On demand. | 7/31/50 | 10,000.00 | 1 year. |
| 4/14/50 | 5,000.00 | On demand. | 1/16/51 | 6,400.00 | 1 year. |
| 4/14/50 | 5,000.00 | On demand. | 1/31/51 | 1 50,000.00 | 7½ years.2 |

[1] With respect to the last note in the face amount of $50,000 two monthly payments were made reducing the amount due on this note to $48,916.66. The balance due the decedent on these notes at the time of his death was $181,508.42 and at the time of distribution to the legatees was $179,341.74.
[2] With amortization of 541.67/Mo. in the meantime.

Prior to the death of S. Duncan Black, the Black Manufacturing Company also borrowed $115,000 from the Maryland Trust Company, Baltimore, Maryland, represented by eight promissory notes in the following amounts:

| Face amounts | Due date 1951 | Face amounts | Due date 1951 |
|---|---|---|---|
| $15,000 | Apr. 23 | $20,000 | May 21 |
| 15,000 | Apr. 28 | 15,000 | May 28 |
| 10,000 | Apr. 23 | 10,000 | May 28 |
| 20,000 | Apr. 28 | 10,000 | July 2 |

These promissory notes contained the following provision on the reverse side thereof:

Each and every party signing or endorsing this note hereby waives presentment, demand, protest notice of nonpayment and all other demand or notice that might otherwise be required by law and binds himself thereby as principal and not as surety.

These promissory notes were then endorsed in the following manner:

S. Duncan Black
The Black Manufacturing Co.
by S. Duncan Black, Jr.,
         President

This endorsement of S. Duncan Black was secured by a deposit with the Maryland Trust Company of 6,700 shares of common stock of the Black & Decker Manufacturing Company, which were owned by the decedent, S. Duncan Black, and which were valued for collateral purposes at $231,500.

On October 2, 1951, the Maryland Trust Company filed a claim with the executors of the estate of S. Duncan Black with respect to the notes of the Black Manufacturing Company demanding payment of these notes. In November of 1951 the executors by order of the Orphans' Court authorized the Maryland Trust Company to turn over to the brokerage firm of Alexander Brown and Sons 2,300 of the 6,700 shares of Black & Decker stock held by the bank as security for the payment of the Black Manufacturing Company notes. The 2,300 shares were sold by Alexander Brown and Sons and the proceeds

turned over to the Maryland Trust Company in payment of their claim filed in the probate proceeding. On November 13, 1951, the Maryland Trust Company returned to the executors the remaining 4,400 shares of Black & Decker stock.

On July 18, 1952, the executors of the last will and testament of S. Duncan Black, deceased, filed their first administration account in the Orphans' Court of Baltimore County, Maryland. In this account the executors scheduled as an asset of the decedent the amount of $34,500 representing the net "Value of notes totalling $115,000.00 of The Black Manufacturing Company payable to the order of the Maryland Trust Company, upon which the decedent was endorser (value based on appraisal of corporation's assets). Note paid by executors on December 20, 1951 _____ $40,250.00." From this latter amount was subtracted the amount of $5,750 representing "amount paid on account 3/28/52" leaving the net value of this asset as $34,500. In the same account a credit was claimed for an expenditure of $115,000 explained as "The Maryland Trust Company—principal amount of notes of The Black Manufacturing Company, upon which decedent was endorser—claim filed." The administration account was approved by the Orphans' Court of Baltimore County, Maryland, on August 13, 1952.

On March 28, 1952, the Black Manufacturing Company paid the executors of the estate of S. Duncan Black the sum of $5,750 in partial payment of the balance due on these notes together with interest thereon for the period January 1 to March 31, 1952, totaling $1,437.50. The remaining balance to be paid on the principal on these notes was $109,250.

On or about July 18, 1952, the executors made a partial distribution of the assets contained in the estate of S. Duncan Black, deceased. The petitioner, Anna R. Black, pursuant to this distribution, received a 25 per cent interest in the promissory notes of the Black Manufacturing Company to the Maryland Trust Company, which had been endorsed by the decedent and paid by the executors. The asset value placed upon Anna R. Black's interest in these notes by the executors was $8,625 (25 per cent of $34,500).

The petitioners, Elizabeth B. Apsey, Charlotte B. Murray, and Alice B. Lewis, pursuant to this distribution, each received a 22½ per cent interest in the promissory notes of the Black Manufacturing Company to the Maryland Trust Company, which had been endorsed by the decedent and paid by the executors. The asset value placed by the executors upon the interests of each of these petitioners in the notes was $7,762.50 (22½ per cent of $34,500). The value of these promissory notes was based upon an appraisal of the assets of the Black Manufacturing Company.

Subsequent to April 1, 1952, the directors of the Black Manufacturing Company and the executors of the estate of S. Duncan Black called an informal meeting of the then stockholders of the Black Manufacturing Company and the holders of the majority of outstanding liabilities of said corporation. S. Duncan Black, Jr., who was then operating the corporation, believed that its liabilities could be liquidated in full if additional time was given to paying off the liabilities of the corporation and the corporation could continue operation under his supervision. It was then agreed and decided that S. Duncan Black, Jr., could continue operations of the Black Manufacturing Company.

On July 18, 1952, the five legatees entered into an agreement with the Black Manufacturing Company providing for the exchange of the two series of notes described above for confessed judgment notes of the Black Manufacturing Company in the respective amounts of $109,250 and $179,341.75. One of the new notes was to be given to each legatee in the amount of her share in the notes of the Black Manufacturing Company payable in the total amount of $109,250, and one note was to be given to each legatee in the amount of her share in the notes payable in the amount of $179,341.75. The new confessed judgment notes in the total amount of $109,250 were payable in quarterly installments over a 5-year period and bore interest at the rate of 5 per cent per annum. The other notes were without interest and were payable over a period of 18 years "beginning when the $109,250.00 in notes * * * have been paid or on March 31, 1957, whichever is earlier."

The confessed judgment notes in the face amount of $109,250, plus interest, have been paid in full except for a small balance of $115.02 which amount is still owing. The confessed judgment notes in the face amount of $179,341.75 were not payable until March 31, 1957, and the full amount is still due and owing.

During the years 1952 and 1953 the petitioners received payments on the "$109,250.00 confessed judgment notes" from the Black Manufacturing Company in the following amounts:

| Name | 1952 | 1953 |
|------|------|------|
| Anna R. Black | $18,750 | $9,971.25 |
| Elizabeth B. Apsey | 16,875 | 8,974.12 |
| Alice B. Lewis | 16,875 | 8,974.12 |
| Charlotte B. Murray | 16,875 | 8,974.12 |

On July 11, 1952, the executors of the estate of S. Duncan Black, deceased, filed with the district director of internal revenue, Baltimore, Maryland, a Federal estate tax return for the estate of S. Duncan Black, deceased. The executors in the estate tax return

claimed a deduction of $115,000 representing the unpaid balance of eight notes of the Black Manufacturing Company on which the decedent was endorser. The estate was allowed the full amount of the deduction. The executors scheduled as miscellaneous property owned by the decedent at the time of his death the value of notes totaling $115,000 of the Black Manufacturing Company payable to the Maryland Trust Company and upon which the decedent was endorser. The value of this asset at the date of death was listed as $40,250 by the executor. This asset was described in the estate tax return as follows:

Value of notes totalling $115,000.00 of The Black Manufacturing Company, Parkton, Maryland, payable to The Maryland Trust Company upon which the decedent was endorser. The Trust Company filed its claim against the estate in the Orphans Court of Baltimore County; notes paid by Executors, estate thereby acquiring title to said notes. Value based on appraisal of corporation's assets as set forth in explanation under Item 4, Schedule C.

Item 4, schedule C, listed the promissory notes of the Black Manufacturing Company totaling $181,508.42 as an asset of the estate having a value of $63,527.95 with the following explanation: "All assets of The Black Manufacturing Company were appraised. After payment in full of the claims of preferred creditors * * * there remains for distribution to general creditors the sum of $123,182.45, or 35% of their claims."

Under the facts above stated respondent has determined and now contends that the basis to petitioners of the claims against the Black Manufacturing Company in the original amount of $115,000 arising by reason of the payment made by the estate of petitioners' testator pursuant to the testator's liability as an endorser on the notes of the company in this amount is the fair market value of such claims as of the time of the testator's death, citing section 113(a)(5) of the Internal Revenue Code of 1939,[2] and *John Parrot, Jr., et al., Executors,* 7 B.T.A. 134, affd. 30 F. 2d 792, *Duval's Estate* v. *Commissioner,* 152 F. 2d 103, affirming 4 T.C. 722, and *Commissioner* v. *Wragg,* 141 F. 2d 638. Since the only evidence relating to such value indicates that it was the total amount of $40,250, it is respondent's contention that recoveries made by petitioners in excess of this amount constitute taxable income to them.

---

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be cost of such property; except that—

* * * * * * *

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * *

Petitioners, however, relying upon section 113(b)(1)(A) [3] and citing Regulations 111, section 29.113(a)(5)–1(d), and *Estate of Fred T. Murphy*, 22 T.C. 242, affd. 229 F. 2d 569, and two unreported cases of this Court, contend that the executors of the estate of petitioners' testator made an investment of $115,000 in the notes of the Black Manufacturing Company when they made the payment in this amount pursuant to the testator's endorsement on these notes and that, therefore, the basis of these notes in the hands of petitioners was at least equal to this amount. In the alternative they argue that the combined valuation placed by the estate tax return on both series of the notes of the Black Manufacturing Company ($103,777.95) [4] should be allocated entirely to the $115,000 series of notes since the substituted confessed judgment notes of the company received by petitioners at or immediately after the distribution of the assets of the estate were so arranged that the $115,000 series of notes took priority over the other series of notes.

The nature of the controversy is indicated by the following quotation from *Estate of Fred T. Murphy, supra* at 258:

Where one acquires property by bequest, devise, or inheritance, its basis in his hands is its fair market value at the time he acquired it. The time of acquisition is the time of the death of his decedent. *Malcolm Clifton Davenport*, 6 T.C. 62. However, if the property is an investment by the fiduciary under a will, the cost or other basis to the fiduciary is to be taken instead of fair market value at the time of death of the decedent. * * *

In the instant cases the estate of petitioners' testator was obligated to pay in full the notes which had been endorsed by him. Being solvent, the estate had no option or discretion as to the making of such payment; the value of the collateral securing the endorsement had no bearing on the executors' decision. The obligation to make payment, however, did not stem from the decedent's ownership of the notes; he had never owned them. The primary purpose of the estate in making the payment was to satisfy a valid collectible claim against the estate and not to acquire an asset. Only as an incident to such payment did the estate acquire the right to proceed against the maker of the notes. There was no deliberate substitution of the notes for cash by the estate.

---

[3] (b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

(A) For expenditures, receipts, losses, or other items, properly chargeable to capital account, but no such adjustment shall be made for taxes or other carrying charges, or for expenditures described in section 23(bb), for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years;

[4] 35 per cent of $115,000 plus $181,508.42=$103,777.95.

Under these circumstances we conclude that the payment by the estate on account of its decedent's endorsement of the notes was not an investment and that such payment did not constitute an additional cost of the notes to the estate.

In our opinion the transaction was accurately and properly reflected in the accounts of the estate and in the estate tax return which showed the amount owed and paid on the testator's endorsement as an obligation of the estate in the full amount of $115,000, and showed the resulting rights of collection against the maker of the notes as an asset of the estate in the amount of their then collectibility. See *John Parrot, Jr., et al., Executors,* and *Commissioner v. Wragg,* both *supra.*

The case of *Estate of Fred T. Murphy, supra,* depended on the doctrine that the payment of assessments on bank stock by the owners of such stock constitutes an additional cost of the stock to the stockholders. Being an additional cost, we concluded that the payment of such assessments was an investment. The payment in the instant cases was not an incident to the ownership of the notes but was by reason of a contract of endorsement by one who was not the payee or holder thereof and can in no way be considered as "an additional cost."

The unreported cases referred to by petitioners in their brief are distinguishable on their facts.

Petitioners' alternative argument is without merit. The fact that at or about the time of the distribution to them of the two series of notes of the Black Manufacturing Company, they entered into arrangements with the maker whereby new notes with different terms were substituted and one series thereby obtained certain priorities over the other cannot be considered as affecting a basis already established. The case of *Webster Atwell,* 17 T.C. 1374, is distinguishable on its facts.

*Decisions will be entered for the respondent.*

