BLUE CREEK COAL, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CLARENCE A. FARBIZO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blue Creek Coal, Inc. v. Commissioner
Docket Nos. 15812-80, 29480-81.
United States Tax Court
T.C. Memo 1984-579; 1984 Tax Ct. Memo LEXIS 95; 48 T.C.M. (CCH) 1504; T.C.M. (RIA) 84579; October 31, 1984. Arthur B. Cunningham, for the petitioners. Joseph R. Goeke, for the respondent. HAMBLEN MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined the following deficiencies in, and additions to, petitioner Blue Creek Coal Inc.'s ("Blue Creek") Federal corporate income tax: Additions to Tax
Year
Deficiency
Sec.6653(b) [1]
1973
$4,182.00
$9,682.00
1974
367,370.00
226,846.00
1975
20,195.00
10,098.00
*98 Respondent determined the following deficiencies in, and additions to, petitioner Clarence Farbizo's ("Farbizo") Federal income taxes: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(b)
6654
1971
$265.00
$66.25
1973
28,118.70
$14,059.35
$332.82
1974
808,946.62
404,473.31
25,824.22
1975
45,513.99
22,756.99
1,965.29
The issues for decision are (1) whether petitioner Blue Creek understated its gross income for the years 1973 through 1975; (2) whether petitioner Farbizo understated his gross income for the years 1971, 1973, 1974, and 1975; (3) whether the amount of $94,590.00, expended by petitioner Blue Creek on bulldozers was deductible in 1976 as part of its net operating loss ("NOL") as a repair expense or should have been capitalized and depreciated; (4) whether respondent properly imposed upon petitioners additions to tax for fraud under section 6653(b); (5) whether petitioner Farbizo is liable *99 for additions to tax pursuant to section 6651(a)(1) for failure to file a return in 1971; (6) whether petitioner Farbizo is liable for additions to tax pursuant to section 6654 for failure to pay estimated tax in the years 1973 through 1975; and (7) whether the statute of limitations bars the assessment or collection of taxes from petitioner Farbizo for the years 1971, 1973, and 1974. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations of fact and attached exhibits are incorporated herein by this reference. Blue Creek was incorporated in 1963 under Ohio law. During the years 1972 through 1975, Farbizo owned, directly or indirectly, 100 percent of the stock in Blue Creek and was the president of the corporation. During these years, Blue Creek was engaged in the business of mining and selling coal and fuel. Blue Creek filed corporate returns on the accrual basis for the years 1973, 1974, and 1975. Farbizo neither filed Federal income tax returns for the years 1969 through 1975 nor paid any income taxes for those years. Farbizo resided in Dover, Ohio, when he filed his petition in this case. In 1974 and 1975, Farbizo *100 and his wife received royalties totalling $4,216.70 and $2,151.57, respectively. Farbizo's onehalf interest in these payments totalled $2,108.35 and $1,075.78. For both 1974 and 1975, the Farbizos received Forms 1099 showing the total royalties they received. Beginning in 1969, Duane Yant ("Yant") was hired by Farbizo as the accountant for Blue Creek. Yant maintained the corporate records and prepared the corporate tax returns for the years in issue based on records furnished to him by Farbizo. Farbizo and Blue Creek agreed to provide Yant with all deposit slips and bank records so Yant could properly maintain corporate records of income.During the years 1973 through 1975, the only active account for which Yant was given records was a corporate checking account at the Beach City Bank. During the taxable years 1973, 1974, and 1975, Blue Creek received receipts from coal and fuel sales amounting to $71,577.00, § 1,114,383.00, and $8,775.00, respectively. These amounts were not reported on Blue Creek's returns. The unreported amounts were not reflected in Blue Creek's books and records. Farbizo and Blue Creek failed to reveal the unreported sales receipts to Yant. *101 Farbizo knew that the returns prepared by Yant did not report these additional receipts when he signed the corporate returns for 1973, 1974, and 1975. In 1973 through 1975, petitioner Farbizo opened over 80 checking, savings, and certificates of deposit accounts at over 60 banking and savings institutions. These accounts were opened in Farbizo's name, with signatory power solely in his name. Farbizo deposited most of Blue Creek's unreported receipts into these accounts.The remaining unreported receipts of Blue Creek were in the form of checks, which petitioner Farbizo cashed. In 1976, Farbizo consolidated the funds in accounts at three banks.The amounts in the three accounts totalled over $1,000,000.00. All the accounts were in Farbizo's name and under his social security number. In a financial statement dated December 20, 1976, Farbizo claimed the amounts in the three accounts as personal assets. During 1973, interest on the certificates of deposit held in Farbizo's name totalled $656.61. During 1974, interest on the certificates held in Farbizo's name totalled $36,291.89. Additionally, $722.17 was earned on a savings account held soley in Farbizo's name in 1974. *102 During 1975, certificates of deposit held solely in Farbizo's name earned $77,805.79. In 1974, petitioner Farbizo opened a checking account in his name at the Cummings Bank Company ("Cummings"). Farbizo used this account as a personal checking account. Farbizo also made advances in 1975 of $90,000.00 from this account to Clarence Mining, Inc., also wholly owned by Farbizo, which was credited to his payable account with that corporation. In 1974, $86,082.44 was deposited in the checking account. This amount was made up of $10,814.50 in Blue Creek receipts and $75,267.94 in amounts transferred from other accounts previously opened by Farbizo with receipts of Blue Creek. In 1975, $80,931.23 was deposited in the Cummings account. These deposits were made up of amounts transferred from accounts opened by Farbizo with receipts from Blue Creek, and over $30,000.00 of the amounts transferred were generated by interest earned on certificates of deposit accounts opened by Farbizo with receipts of Blue Creek. From 1970 through 1979, Farbizo hada payable account with Blue Creek. This account reflected amounts which the corporation purportedly owed him as a result of loans credited *103 to him on the corporate books.Farbizo made withdrawals which were debited to this account on a regular basis, by having corporate checks written to cash and by having corporate checks written to pay personal expenses. In October 1974, Farbizo made two deposits totalling $155,000.00 to Blue Creek's Beach City Bank checking account. Farbizo gave the deposit slips to Yant, and instructed him to credit the $155,000.00 to Farbizo's payable account. Yant asked Farbizo what the source was of the $155,000.00 and was told that the source was "none of his damn business". The sources of the funds were the accounts into which Farbizo had deposited the receipts of Blue Creek. In 1976, Farbizo transferred ownership of Blue Creek to his son, Thomas Farbizo ("Thomas"), in exchange for a promissory note from Thomas. In determining the amount of consideration for the transfer of the stock of Blue Creek, the funds deposited by Farbizo in the various bank accounts in his name were not listed as assets of the corporation. In 1976, Blue Creek spent $94,590.00 installing enclosed cabs on eight bulldozers in order to meet the requirements of the Mine, Health and Safety Administration ("MHSA"). The *104 cabs reduced the noise and dust levels, permitting operators to remain on the equipment for longer periods of time under restrictions of Federal law and regulations. The cabs included seat belts and other safety equipment to protect operators from being crushed in any accidents. Blue Creek had an operating loss in 1976. If the cost of cab installations are deductible as an expense, the NOL of Blue Creek for 1976 is $1,060,920.00. If the cost of installations must be capitalized and depreciated, the NOL of Blue Creek for 1976 is $985,829.00. The audit of Blue Creek was assigned to respondent's agent, John Ault ("Ault") in 1975. The audit was not based upon informant activity by Yant or any other person. Ault requested information on the sources of Farbizo's $155,000.00 advance to Blue Creek in 1974. Ault was given three documents, allegedly representing loans to Farbizo from Jamie and Alice Brewer ("Brewers") in the amount of $155,000.00. Farbizo admits that the notes were false, and no such loans were made to Farbizo. However, in a meeting with Ault in 1976, Farbizo recounted in great detail how he borrowed the money from the Brewers. All the statements made by *105 Farbizo to Ault relative to the alleged loans were false. In a judgment dated December 10, 1980, the U.S. District Court for the Northern District of Ohio convicted Farbizo of criminal tax evasion under section 7201 for the year 1975, with respect to his personal income taxes. He was also convicted of fraud and fraudulent statements under section 7206(1), with respect to Blue Creek's 1974 corporate tax return. In a judgment dated December 10, 1980, the District Court also found Blue Creek guilty of fraud and fraudulent statements under section 7206(1), with respect to Blue Creek's 1973 and 1974 corporate tax returns. In a Memorandum and Order dated June 16, 1982, this Court determined that: (1) Blue Creek is estopped from denying that substantial income was omitted from its 1973 and 1974 returns; (2) Blue Creek is estopped from denying that it filed false and fraudulent returns with the intent to evade tax for the years 1973 and 1974; and (3) Blue Creek is estopped from asserting that the statute of limitations bars the assessment and collection of income tax for the years 1973 and 1974. In an order dated June 16, 1982, this Court determined that Farbizo is estopped *106 from denying he is liable for the addition to tax under section 6653(b) for the taxable year 1975 on the amount of underpayment of tax as determined to be finally due. OPINION 1. Understatement of Income by Blue Creek
By previous Order of this Court, Blue Creek was estopped from denying that substantial income was omitted from its 1973 and 1974 returns. Respondent's figures for the years in issue are supported by voluminous documentation in the record. Petitioner Blue Creek presented no evidence to show that respondent's determinations of the amounts of understatement and resulting deficiencies in taxes were incorrect. Petitioner stipulated that the amounts determined by respondent were correct. Therefore, we sustain respondent's determinations of Blue Creek's understatement of gross income. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). 2. Understatement of Income by Farbizo
In the notice of deficiency issued to Farbizo, respondent determined that the amounts Farbizo diverted from Blue Creek were income to him. Respondent determined that the interest earned on the various certificate of deposit and savings accounts opened *107 by Farbizo constituted income to him. Further, respondent determined Farbizo received royalty income. The petitioner bears the burden of proving that respondent's determinations are not correct. Welch v. Helvering,supra;Rule 142(a). While petitioner Farbizo does not dispute the royalty income, he does argue that the amounts from Blue Creek and the interest income are not taxable to him. On numerous occasions, the courts have addressed the issue of whether income diverted by shareholders from a closely held corporation and not reported by the corporation is income to the shareholders. United States v. Thetford,676 F.2d 170 (5th Cir. 1982), cert. denied 459 U.S. 1148 (1983); Dawkins v. Commissioner238 F.2d 174 (8th Cir. 1956), affg. a Memorandum Opinion of this Court; United Mercantile Agencies, Inc. v. Commissioner,23 T.C. 1105 (1955). Taxpayers have argued that the funds were not diverted from the corporation, but were held on behalf of the corporation. These arguments have been rejected. See United States v. Thetford,supra at 175. In Moore v. Commissioner,619 F.2d 619 (6th Cir. 1980), *108 affirmed a Memorandum Opinion of this Court holding that certain receipts of the Blue Ridge Transportation Company, Inc. were diverted by the sole shareholder, Moore. Certain incoming checks were cashed by Moore. When the cash was returned to the corporation the bookkeeper was instructed to credit those amounts to Moore's personal account. This Court found that the diverted amounts were income to Moore. We found that the corporation had sufficient earnings and profits to pay Moore dividends in the amounts diverted. In the instant case, it is clear that Farbizo diverted unreported income from Blue Creek. He had total control over these funds and was free to dispose of them as he pleased. Farbizo simply cashed and spent some of the diverted checks. In other instances, he placed diverted receipts in his checking account, paid for personal expenses and made contributions to Clarence Mining credited to his payable account by that company. Farbizo used diverted funds to create a large number of accounts solely in his name. When he returned $155,000.00 of the receipts to Blue Creek, he instructed Yant to credit his payable account with the funds. Petitioner Farbizo argues that *109 he deposited the corporate receipts into personal accounts to "protect" the funds for the corporation, and claims that he never considered the funds to be hispersonal property. His actions indicate otherwise. Petitioner did not include the funds as a part of the corporation's assets when Blue Creek was sold to his son. He claimed the diverted receipt accounts as personal assets on a financial statement. The only proof offered by Farbizo to support his claim of "protection" of corporate assets was his self-serving testimony. We find his story unbelievable, and found him to be an unredible witness. Farbizo diverted funds from Blue Creek with specific intent to appropriate such funds to his personal use and insure that the amounts were not recorded on the corporate books or reported on the corporate tax returns. Farbizo exercised total control over the funds, and his subsequent disposition of the funds did not alter his personal ownership or create any color of corporate character with respect to the diverted amounts. See Moore v. Commissioner,supra.Thus, we find the amounts diverted by Farbizo from Blue Creek during the years 1971, 1973, 1974 *110 and 1975 includible as dividends in his gross income under section 61(a)(7). [2]
In addition, we find that Farbizo is taxable under section 61(a)(4) on the interest income earned on the bank accounts in his name during 1973, 1974 and 1975. There is no basis to attribute the income to Blue Creek. The accounts were all in Farbizo'sname and with signatory authority solely with him. Farbizo commingled $30,000.00 of this interest income into his personal checking account. We find he was the recipient of the interest income, and it is includible in his gross income for the years in issue. 3. Blue Creek's 1976 NOL
The size of Blue Creek's 1976 NOL affects its final tax liabilities for the years in issue. The parties have stipulated that the amount of the NOL turns on the issue of whether the amounts spent on the bulldozers were currently deductible expenses or whether they were capital expenditures. Section 263 provides that no deduction shall *111 be allowed for amounts paid "for permanent improvements or betterments made to increase the value of any property or estate." Section 162 provides that amounts expended as ordinary and necessary expenses in carrying on a trade or business are deductible. Section 1.162-4, Income Tax Regs., which deals specifically with repairs, provides that: The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense, provided the cost of acquisition or production or the gain or loss basis of the taxpayer's plant, equipment, or other property, as the case may be, is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against *112 the depreciation reserve if such an account is kept. Section 1.263(a)-1(a), Income Tax Regs., reiterates the general rule stated in section 263. Section 1.263(a)-1(b) provides: In general, the amounts referred to in paragraph (a) of this section include amounts paid or incurred (1) to add to the value, or substantially prolong the useful life, of property owned by the taxpayer, such as plant or equipment, or (2) to adapt property to a new or different use. Amounts paid or incurred for incidental repairs and maintenance of property are not capital expenditures within the meaning of subparagraphs (1) and (2) of this paragraph. See section 162 and section 1.162-4. The expenditures by Blue Creek to install the cabs on its bulldozers cannot be characterized as for the repair of the bulldozers.The cabs were added to meet safety requirements of MHSA. The bulldozers were operational, and the additions of the cabs were not in the nature of repairing or mending. The cabs were improvements on the quality of the bulldozers, and allowed them to be operated *113 for longer periods of time under MHSA regulations. Thus, the amounts expended to install the cabs were clearly not incidental repairs for maintenance, but rather expenditures to improve them and provide added capability. We hold that the expenditures by Blue Creek in 1976 to install the cabs on its bulldozers were capital in nature, and thus the amount of the operating loss that may be carried back is $985,829.00, as stipulated by the parties. 4. Section 6653(b) Additions to Tax
The next issue for decision is whether respondent's determinations of fraud should be sustained. We find that the evidence provided by respondent shows that petitioners Blue Creek and Farbizo fraudulently evaded tax in the years at issue. Section 6653(b) provides for an addition to tax of 50 percent of the underpayment if any part of the underpayment is due to fraud. Respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). The existence of fraud is a question of fact to be resolved *114 upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion, 578 F.2d 1383 (8th Cir. 1978). To establish fraud, respondent must show that the taxpayer filed his return with the specific intent to evade tax believed to be owing. Wilson v. Commissioner,76 T.C. 623, 634 (1981). The consistent understatement of substantial amounts of income over several years is strong evidence of fraud. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962); Vannaman v. Commissioner,54 T.C. 1011, 1018 (1970). The failure to keep adequate records is indicative of an attempt to defraud. Conduct designed to mislead or conceal is a further indication of fraud. Spies v. United States,317 U.S. 492 (1943); Estate of Beck v. Commissioner,56 T.C. 297 (1971). In the instant case, Blue Creek is estopped from denying its fraud in the taxable years 1973 and 1974. From the record before us, it is clear that Blue Creek's fraud continued in 1975. In keeping with the pattern of the prior years, substantial amounts *115 of income were not reported on Blue Creek's 1975 return. The receipts were concealed from Yant, Blue Creek's return preparer. The corporate records were, therefore, inadequate to correctly reflect Blue Creek's income. Farbizo, as president of the corporation, signed the corporate return in 1975 knowing that substantial amounts of income were not included on the return. Thus, we find that respondent has clearly and convincingly demonstrated Blue Creek's fraud for the years in issue. Farbizo is estopped from denying his liability under section 6653(b) for the year 1975. There are numerous indicia of fraud for the years 1973 and 1974. Petitioner Farbizo consistently and intentionally understated his income, failing to file any returns for those years. Additional evidence of fraud is found in Farbizo's failure to report royalty income which he received during those years. Further, Farbizo affirmatively attempted to conceal and mislead respondent as to the source of his funds. See Zack v. Commissioner,692 F.2d 28 (6th Cir. 1982), affg. a Memorandum Opinion of this Court, cert. denied 460 U.S. 1084 (1983). By his own admission, Farbizo created *116 false notes evidencing loans from the Brewers. He also related a completely fabricated tale to respondent's agent regarding these loans. Finally, in addition to respondent's affirmative proof of petitioner Farbizo's fraudulent conduct and intent, we have not found petitioner to be a credible witness. His self-serving testimony as to his innocence of fraud is incredible in light of his admitted fraudulent behavior. On the basis of our consideration, we find that respondent has clearly and convincingly demonstrated fraud for the years in issue for purposes of section 6653(b).We have considered petitioner Farbizo's other arguments and find them unpersuasive. 5. Section 6651(a)(1) Addition to Tax
The taxpayer bears the burden of establishing that the failure to file a tax return is due to reasonable cause, and not due to willful neglect. Electric and Neon, Inc. v. Commissioner,56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). Petitioner Farbizo presented no evidence showing a reasonable cause for *117 his failure to file a return for 1971. Therefore, petitioner is subject to the addition to tax under section 6651(a)(1) for the year 1971. 6. Section 6654 Additions to Tax
Our above conclusions make it abundantly clear that petitioner Farbizo incurred Federal tax liabilities in the years 1973 through 1975. Farbizo made neither withholding nor estimated tax payments. Thus, Farbizo is subject to additions to tax under section 6654(a) for the years 1973, 1974 and 1975. Estate of Ruben v. Commissioner,33 T.C. 1071 (1960). 7. Statute of Limitations
Petitioner Farbizo argues then under section 6501(a), the threeyear statute of limitations bars the assessment and collection of income tax for the years 1971, 1973 and 1974. The three year statute is based upon the filing of returns. Farbizo failed to file returns for any of the years in issue, and under section 6501(c)(3), the tax may be assessed or collected "at any time." Further our conclusions as to the section 6653(b) addition, bring into play section 6501(c)(1) in the years 1973 and 1974. To reflect the foregoing, Decision will be entered under Rule 155 for Docket No. 15812-80.
*118 Decision will be entered under Rule 155 for Docket No. 29480-81.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners failed to show that Blue Creek did not have sufficient earnings and profits to pay Farbizo these dividends.↩